**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| VCI, INC.,<br>**Plaintiff,**<br>v.<br>TFORCE FREIGHT, INC.,<br>**Defendant.** | **CIVIL. NO. 23-1148 (RAM)** |

**OPINION AND ORDER**

RAÚL M. ARIAS-MARXUACH, United States District Judge

This matter comes before the court on Defendant TForce Freight Inc.'s ("TForce" or "Defendant") *Motion for Summary Judgment*. (Docket No. 48). Having reviewed the parties' submissions, the Court **GRANTS** Defendant's request for summary judgment.

## I. BACKGROUND

In September 2022, VCI, Inc. ("Caribbean Scientific" or "Plaintiff") contracted with TForce for a shipment of goods from Texas to Puerto Rico. (Docket No. 12 at 2). On February 17, 2023, Plaintiff filed a civil action in the Court of First Instance in San Juan, seeking compensation from Defendant for alleged damages to its shipment. (Docket No. 1-1). On March 28, 2023, Defendant removed the case to federal district court, stating the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, exclusively governed the facts of the Plaintiff's complaint. (Docket No. 1). On April 24, 2023, Defendant further filed a *Motion*

*to Dismiss* pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff only alleged causes of action under state law and that the Carmack Amendment preempted all state causes of action. (Docket No. 8). On May 9, 2023, Plaintiff filed an *Amended Complaint* adapting the allegations and facts of the case to a claim under the Carmack Amendment. (Docket No. 12). Plaintiff did not contest the removal of the case and constrained damages to the limits of what the Carmack Amendment permits. On June 15, 2023, this Court denied Defendant's *Motion to Dismiss* as moot in a docket order because the *Amended Complaint* superseded the original complaint. (Docket No. 17). TForce filed an *Answer to Amended Complaint* on June 16, 2023. (Docket No. 18).

In its *Amended Complaint*, Plaintiff asserts that it may recover damages from Defendant for the actual loss of property resulting from the transportation of its cargo in interstate commerce, pursuant to 49 U.S.C. § 14706. (Docket No. 12 ¶ 21). As the shipper, Plaintiff purports that it can collect from the Defendant carrier by establishing a prima facie case of negligence because the statute is structured like a strict liability claim, allowing a shipper to collect from a carrier regardless of fault. Id. ¶¶ 22-23. Plaintiff avers that it "delivered the goods to Defendant in good condition, and because Defendant failed to follow the do not double stack shipping instructions, the goods were

delivered damaged to Plaintiff's client." Id. ¶ 24. Accordingly, Plaintiff asserts that Defendant is liable for the amount of damaged goods – $21,609.50. Id. ¶¶ 8-14, 27. Plaintiff seeks $20,608.50 for the cost of damaged goods, the costs of litigation, and for any such additional relief the Court deems appropriate. Id. ¶ 28.

Defendant filed a *Motion for Summary Judgment* ("*Motion*") on April 15, 2024. (Docket No. 48). Defendant avers that it is not liable to Plaintiff for the alleged damages because Plaintiff chose to not seek pre-authorization for its "custom-made countertops" before transportation, a requirement specifically stated in Defendant's Tariff and incorporated into the Bill of Lading – all of which compose the Carriage of Contract. Id. at 2. Accordingly, Defendant asserts that "Plaintiff enjoyed the benefit of a lower freight charge to transport Plaintiff's custom-made countertops" and "Defendant relied on Plaintiff's choice and thus set a lower freight charge." Id. at 2-6. Furthermore, Defendant highlights that Plaintiff is a "sophisticated shipper" that engages in hundreds of transportations involving bill of lading every year, so it is bound by its decision. Id. at 7-10. "Plaintiff cannot now profit from its negligence or intentional concealment of the nature of the custom-made countertops." Id. at 5.

Plaintiff filed a *Response in Opposition* ("*Response*") on May 6, 2024. (Docket No. 51). Plaintiff's main arguments are that it provided Defendant with a description and the value of the merchandise to be shipped; established a prima facie case of liability; and Defendant's claims that there was no request for authorization does not serve as an exception to the application of the strict liability imposed by the Carmack Amendment. Id. at 3-5. Furthermore, Plaintiff contends that there are disputes of material fact that make summary judgment improper. Id. at 7-9. Plaintiff maintains that it "never concealed or misrepresented" the shipment details to Defendant, rather it "informed Defendant of the value of the merchandise, and requested an insurance of $55,000 on the freight." Id. at 5. At no point did Defendant inform Plaintiff of what a pre-authorization process would look like, even though Defendant had "all the information it would have needed" to grant pre-authorization. Id. at 6, 9. Additionally, Plaintiff disputes whether pre-authorization was even needed because the shipped items were regular epoxy countertops, with the "only thing custom about them [being] their cut." Id. at 9. Moreover, Defendant filled out the Bill of Lading and chose the shipping class, having first asked the necessary questions from Plaintiff, and thus cannot avoid liability pursuant to the information on the Bill of Lading. Id. at 6-7.

Defendant filed a *Reply in Support* ("*Reply*") on May 13, 2024. (Docket No. 52). Therein, Defendant highlights that Plaintiff failed to challenge any of the relevant facts in its *Motion*, nor did it address the predominant caselaw in its arguments. Id. at 2-5. Additionally, Defendant asserts that Plaintiff, as a sophisticated shipper, either should know or is presumed to know the terms and conditions of its transportation agreements, so any claim that Plaintiff did not read the transportation documents – or that its intermediary third-party shipper filled out the Bill of Lading – is not a defense. Id. at 2, 5-8.

## II. LEGAL STANDARD

A motion for summary judgment is governed by Fed. R. Civ. P. 56(a). Summary judgment is proper if the movant shows that (1) there is no genuine dispute as to any material fact and (2) they are entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008). A fact is considered material if it "may potentially 'affect the outcome of the suit under governing law.'" Albite v. Polytechnic Univ. of P.R., Inc., 5 F. Supp. 3d 191, 195 (D.P.R. 2014) (quoting Sands v. Ridefilm Corp., 212 F.3d 657, 660-61 (1st Cir. 2000)).

The moving party has "the initial burden of demonstrat[ing] the absence of a genuine issue of material fact with definite and competent evidence." Mercado-Reyes v. City of Angels, Inc., 320 F. Supp. 344, at 347 (D.P.R. 2018) (quotation omitted). The burden then shifts to the nonmovant, to present "competent evidence to rebut the motion." Bautista Cayman Asset Co. v. Terra II MC & P, Inc., 2020 WL 118592, at 6* (D.P.R. 2020) (quoting Méndez-Laboy v. Abbott Lab., 424 F.3d 35, 37 (1st Cir. 2005)). A nonmoving party must show "that a trialworthy issue persists." Paul v. Murphy, 948 F.3d 42, 49 (1st Cir. 2020) (quotation omitted).

While a court will draw all reasonable inferences in favor of the non-movant, it will disregard conclusory allegations, unsupported speculation and improbable inferences. *See* Johnson v. Duxbury, Mass., 931 F.3d 102, 105 (1st Cir. 2019). Moreover, the existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Scott v. Harris, 550 U.S. 372, 379 (2007) (quotation omitted). Hence, a court should review the record in its entirety and **refrain from making credibility determinations or weighing the evidence**. *See* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 135 (2000).

In this District, summary judgment is also governed by Local Rule 56. *See* L. CV. R. 56(c). Per this Rule, an opposing party

must "admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Id. Furthermore, unless the fact is admitted, the opposing party must support each denial or qualification with a record citation. Id.

Additionally, Local Rule 56(c) allows an opposing party to submit additional facts "in a separate section." L. CV. R. 56(c). Given that the plain language of Local Rule 56(c) specifically requires that any additional facts be stated in a separate section, parties are prohibited from incorporating numerous additional facts within their opposition. *See* Natal Pérez v. Oriental Bank & Trust, 291 F. Supp. 3d 215, 218-219 (D.P.R. 2018) (quoting Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 32 (1st Cir. 2010) and Malave-Torres v. Cusido, 919 F.Supp. 2d 198, 207 (D.P.R. 2013)).

If a party opposing summary judgment fails to comply with the rigors that Local Rule 56(c) imposes, "a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated." Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007). Thus, litigants ignore this rule at their peril. *See* Natal Pérez, 291 F. Supp. 3d at 219 (citations omitted).

## III. UNCONTESTED FACTS

To make findings of fact, the Court reviewed Defendant's *Statement of Uncontested Material Facts in Support of the TForce Freight, Inc.'s Motion for Summary Judgment* ("*Uncontested Facts*") (Docket No. 48-1) and Plaintiff's *Statement of Uncontested Material Facts in Support of [Plaintiff's] Opposition to TForce Freight, Inc[.]'s Motion for Summary Judgment* (Docket No. 51-1).

### A. Failure to Comply with Rule 56

It should be noted that Plaintiff[1] failed to properly address Defendant's assertions of fact as required by Rule 56(c), thus this Court may consider Defendant's proposed facts as undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). Rule 56(e) establishes "that a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)).

[1] Defendant in its *Reply* also failed to fully comply with Local Rule 56(d) in regard to referencing Plaintiff's numbered paragraphs with a corresponding reply statement; however, since Plaintiff failed to respond accordingly in its opposition, all facts it attempted to proffer were additional instead of responsive. *See* L. CV. R. 56(d) (The "reply statement shall admit, deny or qualify those additional facts [submitted by the opposing party as well] by reference to the numbered paragraphs of the opposing party's statement of material facts.").

Furthermore, Local Civil Rule 56(e) provides that parties must submit statements of fact and oppositions thereto, and thus "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." L. CV. R. 56(e). Local Rule 56 is an "anti-ferret rule . . . intended to protect the district court from perusing through the summary judgment record in search of disputed material facts and prevent litigants from shifting that burden onto the court." Lopez-Hernandez v. Terumo P.R. LLC, 64 F.4th 22, 26 (1st Cir. 2023). Accordingly, "[u]nder Local Rule 56, a district court is free, in the exercise of its sound discretion to accept the moving party's facts as stated . . . when the statements contained in the movant's Statement of Uncontested Facts . . . are not properly controverted." Id. "[V]iolations of this local rule are astoundingly common and constitute an unnecessary burden to the trial court's docket and time." Id. Importantly, "**[t]he First Circuit's repeated admonition on this issue in the last few years, places the Puerto Rico federal bar on clear notice that compliance with Local Rule 56 is a mandate, not a suggestion.**" Ramirez-Rivera v. DeJoy, 693 F.Supp.3d 210, 213 (D.P.R. 2023)(emphasis added).

In the present case, Plaintiff failed to comply with Local Rule 56(c) by not submitting an "opposing statement [that]

**admit[s], den[ies] or qualif[ies] the facts** supporting the motion for summary judgment **by reference to each numbered paragraph** of [Defendant's] statement of material facts." L. CV. R. 56(c). "**The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.**" L. CV. R. 56(e). As such, the Court finds Defendant's *Uncontested Facts* (Docket No. 48-1) to be uncontroverted and admits those that are properly supported.

**B. Findings of Fact**

After **only crediting material facts that are properly supported by a record citation[2] and uncontroverted**, the Court makes the following findings of fact:[3]

1. Plaintiff alleges damage occurred to certain goods transported in interstate commerce from Texas to Puerto Rico. (Docket No. 48-1 ¶ 1).

2. The Bill of Lading, prepared by TForce and dated September 6, 2022, states that the entire

[2] Any supporting documents not in the English language and lacking a certified English translation were not considered. *See* L. CV. R. 5(c). Specifically, Plaintiff submitted an email exchange conducted in both English and Spanish at Docket No. 51-2, without providing a certified translation or seeking leave to file English translations. As such, none of the facts corresponding to that exhibit were considered. *See* L. CV. R. 5(c).

[3] References to a specific Finding of Fact shall be cited in the following manner: (Fact ¶ _).

transportation was made subject to the TForce Tariff. (Docket Nos. 48-1 ¶¶ 4, 6, 9 and 51-1 ¶ 10).

3. It further states that freight was "RECEIVED, subject to . . . the rates, classifications and rules that have been established by the carrier and are available to shipper upon request." (Docket No. 48-1 ¶ 7).
4. The TForce Tariff was made available to Plaintiff and all shippers upon request, pursuant to federal law, and is also publicly available on the internet at www.tforcefreight.com. Id. ¶¶ 7-8, 28-29.
5. On its front page, the TForce Tariff states that limitations apply and customers are encouraged to review the terms, specifically stating: "TForce Freight encourages shippers to review this publication, as some items may be subject to limitations of liability, released values or other options specific to a shipment or a commodity." Id. ¶ 28.
6. According to the TForce Tariff, certain identified articles require a request of pre-authorization, without which TForce will not be liable for any allegations of cargo damage. Id. ¶¶ 10, 20.
7. Part 1A of the TForce Tariff states that "Custom items, not typically maintained in inventory" qualify as

articles requiring pre-authorization; "in the event articles identified in this Item as restricted in Part 1A are inadvertently accepted but not approved in writing by Carrier prior to pickup, Carrier will not be liable for delay, loss, or damage." Id. ¶¶ 11, 27.

8. "Custom countertops" are identified in the TForce Tariff as an example of an item that requires pre-authorization. Id. ¶¶ 11-12, 21.

9. On September 6, 2022, TForce coordinated with Durcon, Plaintiff's supplier,[4] to pick up the shipment. (Docket Nos. 51-1 ¶¶ 7-11 and 51-4).

10. TForce stated that its driver would "need [the Bill of Lading] and commercial invoice for this shipment at the pickup time," and specified to let them know if assistance was needed with the Bill of Lading. (Docket No. 51 at 71).

11. Durcon replied that it could provide the commercial invoice, but that the "[Bill of Lading] should be provided by Tforce. We are not coordinating this

[4] In its *Response*, Plaintiff refers to Durcon as its supplier. (Docket No. 51 at 3). The Court notes that on the copy of the freight bill, as well as on Plaintiff's direct claim with TForce, Caribbean Scientific is listed as the consignee and Durcon as the shipper. (*See* Docket Nos. 51-5 and 51-10).

shipment. All information has been given to you. Freight is ready." Id. at 70-71.

12. TForce inquired what commodity should be placed on the Bill of Lading; Durcon responded epoxy sinks and counter tops. (Docket Nos. 51-1 ¶¶ 8-9 and 51 at 69-70).

13. The Bill of Lading identified the freight as five pallets of "epoxy sinks and countertops." (Docket No. 48-1 ¶¶ 5, 13, 19).

14. The countertops were custom-made based on measurements and cut custom to size. (Docket Nos. 48-1 ¶¶ 16-18 and 51-1 ¶ 6).

15. Plaintiff arranges more than 200 shipments per year between air and sea. (Docket No. 48-1 ¶ 24).

16. Plaintiff did not request pre-authorization to transport the countertops. Id. ¶ 22.

17. TForce based the freight charge on Plaintiff's decision not to seek pre-authorization for custom goods, relying on Plaintiff's decision in exchange for a lower freight rate. Id. ¶¶ 31-34, 36.

18. Plaintiff filed a cargo loss and damage claim with TForce directly. (Docket No. 51-10).

19. TForce declined Plaintiff's claim, stating: "[t]he commodity shipped is listed in the TForce Freight Rules Tariff, Item 780-A Section 1A Item Requiring Prior Authorization for Custom Made Goods, which include counter tops. Items shown on this list can be picked up [but] require written approval by the carrier prior to pick up. Approval can be granted by specific Regional or TForce Freight Corporate Managers," and there is not a signed agreement in Plaintiff's file. (Docket No. 51-9).

## IV. DISCUSSION

The 1906 Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, (the "Carmack Amendment" or "Amendment") "governs the liability of carriers for lost or damaged goods in interstate commerce." Camar Corp. v. Preston Trucking Co., 221 F.3d 271, 274 (1st Cir. 2000). The Amendment creates a "federal statutory remedy on the bill of lading against both the originating and destination carrier." Rankin v. Allstate Ins. Co., 336 F.3d 8, 17 (1st Cir. 2003); *see also* York v. Day Transfer Co., 525 F.Supp.2d 289, 297 (D.R.I. 2007) ("The Carmack Amendment provides shippers with the statutory right to recover for actual losses or injuries to their property caused by carrier involved in the shipment."). "To make a prima facie case under the Carmack Amendment, a plaintiff must

show 1) delivery to the carrier in good condition; 2) arrival in damaged condition; and 3) the amount of damages caused by the loss." Camar Corp., 221 F.3d at 274; *see* Mo. Pac. R.R. Co. v. Elmore & Stahl, 377 U.S. 134, 137 (1964). If a plaintiff establishes a prima facie case, "the burden of proof is upon the carrier to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability." Mo. Pac. R.R. Co., 377 U.S. at 138. "[I]n exchange for imposing 'something close to strict liability upon originating and delivering carriers,' the Carmack Amendment limits recovery to actual damages." Ameriswiss Tech., LLC v. Midway Line of Ill., Inc., 888 F.Supp.2d 197, 203 (D.N.H. Sept. 27, 2012) (quoting Rankin, 336 F.3d at 9) (internal citations omitted).

Specifically, under the Carmack Amendment:

> A carrier providing transportation or service . . . shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service . . . are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States . . .

49 U.S.C. § 14706(a)(1). However, pursuant to § 14706(c)(1)(A), a carrier may:

> [E]stablish rates for the transportation of property . . . under which the liability of the carrier for such property is limited to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding transportation.

Id. § 14706(c)(1)(A). The Carmack Amendment provides an alternative for a written agreement between carrier and shipper as to the limited value of a shipment. A tariff can provide in substance that a shipment's value is set at a maximum amount, *unless* the shipper declares otherwise, "since the shipper is charged with knowledge of the tariff." Hollingsworth & Vose Co. v. A-P-A Transp. Corp., 158 F.3d 617, 619 (1st Cir. 1998). It follows then, that "in leaving the declaration space blank in the bill of lading," a shipper agrees "by virtue of the tariff's 'unless' clause" to the maximum valuation or limitation of liability listed in the tariff. Id.

Under First Circuit precedent, "[t]o limit liability, a carrier must 1) maintain an approved tariff, 2) issue a bill of lading prior to shipment and 3) give the shipper a reasonable opportunity to choose between levels of liability, provided that 4) 'the shipper is a substantial commercial enterprise capable of

understanding the agreements it signed.'" Woods Hole Oceanographic Inst. v. ATS Specialized, Inc., 447 F.Supp.3d 261, 279 (D. Mass. Aug. 20, 2021) (quoting Hollingsworth, 158 F.3d at 621. In Hollingsworth, the First Circuit rejected the concept that written assent to a limitation of liability was required in addition to a bill of lading containing a standard declared value blank:

> It is enough that the tariff made both coverages available, the bill of lading afforded the shipper a reasonable opportunity to choose between them . . . and the shipper was a substantial commercial enterprise capable of understanding the agreements it signed. In our view, that is normally enough to give this shipper 'a fair opportunity' to opt for more coverage in exchange for a higher rate.

158 F.3d at 621. By contrast, if there is nothing in the record "evidence[ing] an agreement affording [the shipper] a reasonable opportunity to choose between the regular rate and a rate reflecting a higher level of liability," the Defendant has not sufficiently demonstrated an agreement to limit liability. Camar Corp., 221 F.3d at 276. For example, in Camar Corp., unlike in Hollingsworth, "none of the relevant documents contained a declared value blank permitting Camar to declare the value of the equipment and invoke a different level of liability." 221 F.3d at 276. Accordingly, the court found this to be an atypical situation

in which the bill of lading, or some equivalent, did not constitute a sufficient agreement to limit liability. Id.

In the instant case, TForce contends that it limited its liability pursuant to its published tariff – the terms of which require shippers to receive pre-authorization for custom goods, otherwise TForce will not be liable for cargo loss or damage. Plaintiff argues that TForce prepared the Bill of Lading and decided upon the shipping class and liability without informing Plaintiff of a need for a pre-authorization to raise liability coverage. However, it is uncontested the Bill of Lading and TForce Tariff were available to Plaintiff. (Fact ¶ 4). Additionally, it is uncontested the TForce Tariff included limitations terms that specified "custom countertops" as requiring specific pre-authorization.[5] (Facts ¶¶ 5-8).

Although Plaintiff asserts Defendant did not explicitly inform Plaintiff of its pre-authorization requirement after Plaintiff provided details of the shipment value, merchandise, and insurance, it is evident that Plaintiff is a sophisticated shipper with presumed substantial knowledge of the enterprise given the number of shipments it arranges per year. (Fact ¶ 15). Thus, upon being presented the Bill of Lading subject to the TForce Tariff,

[5] The Court also notes that the Bill of Lading had blanks available for adding a declared value. (*See* Docket No. 48 at 94).

Plaintiff had "'a fair opportunity' to opt for more coverage in exchange for a higher rate." Hollingsworth, 158 F.3d at 621.

Despite Plaintiff's contention that the "items shipped were regular epoxy countertops . . . not custom merchandise," it nonetheless admitted that "they are cut custom to size, as most laboratory furniture is built to specific sizes." (Docket No. 51-1 ¶ 6). Furthermore, Plaintiff's witnesses described the countertops as custom made to specific measurements. (*See* Docket No. 48-1 at ¶¶ 16-18). As such, it is uncontested the countertops were custom-made based on measurements and cut custom to size. (Fact ¶ 14). Accordingly, the "custom countertops" fall within the purview of the TForce Tariff with liability limitations on custom items that require pre-authorization. Considering it is also uncontested that Plaintiff failed to request said pre-authorization (Fact ¶ 16), there is no genuine dispute of material fact.

In sum, TForce met the elements for limiting its liability because it: (1) maintained an approved tariff, (2) issued a bill of lading prior to shipment, and (3) gave Plaintiff, a shipper in a "substantial commercial enterprise capable of understanding the agreements it signed," (4) a reasonable opportunity to choose between levels of liability both on the blank value spaces on the Bill of Lading and by its subjection to the published tariff. *See*

Hollingsworth, 158 F.3d at 621. "The tariff made both coverages available, the bill of lading afforded the shipper a reasonable opportunity to choose between them." Id. Therefore, Defendant is not liable for any allegations of damages since Plaintiff failed to request pre-authorization for its custom countertops.

## V. CONCLUSION

For the foregoing reasons, the Court ORDERS that the Defendant TForce Freight Inc.'s *Motion for Summary Judgment* is **GRANTED.**

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 1st day of November 2024.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE